# Koch, Appellant, v. Oil City.

*Municipalities—Board of health—Contract—Furniture for emergency hospital.*

1. A municipality cannot resist payment for furniture delivered to it for use in an emergency smallpox hospital, on the ground that no formal order had been given for the goods to the seller by the health officer, where it appears that the goods were delivered at the hospital, were suitable for the purpose intended, were of proper price, and had been used by the city and taken from one hospital to another, without any offer to return them.

2. Where a person without authority previously delegated purchases goods for another, and the latter receives the goods, although in ignorance of the act of assumed agency, he must either disaffirm the act of the agent, and return the goods, or pay the seller their market value.

Argued April 11, 1911. Appeal, No. 148, April T., 1911, by plaintiff, from judgment of C. P. Venango Co., April T., 1909, No. 57, on verdict for defendant in case of R. G. Koch, doing business as R. G. Koch & Company, v. Oil City. Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit for goods sold and delivered. Before CRISWELL, P. J.

The opinion of the Superior Court states the case.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Peter M. Speer*, for appellant.—The right to quarantine and provide a building for that purpose necessarily includes the right to put the building in such condition as to make it habitable, and also includes the right to furnish necessary provisions and nursing: In re Kibbey Family, 12 Pa. Dist. Rep. 527; Poor Directors v. So. Bethlehem Boro, 13 Pa. Dist. Rep. 482.

". . . . The general principle of liability of corporations on an implied contract, where the law presumes a contract to restore money or property obtained by mistake or without authority of law, is supported by a vast number of authorities:" Magill v. Kauffman, 4 S. & R. 317; Leonard v. Long Island City, 20 N. Y. Supp. 26; Harlem Gaslight Co. v. New York, 33 N. Y. 309; Kramrath v. Albany, 127 N. Y. 575 (28 N. E. Repr. 400); Central Bitulithic Paving Co. v. Mt. Clemens, 143 Mich. 259, (106 N. W. Repr. 888); Carlisle & Finch Co. v. Sand Co., 20 Pa. Superior Ct. 378; Wojciechowski v. Johnkowski,

16 Pa. Superior Ct. 444; Allegheny v. McClurkan, 14
Pa. 81.

*Peter A. Wilbert,* for appellee.—The board of health
does not have the power to make a contract for the salary
of health officers in an amount in excess of the amount
appropriated therefor by the city councils, and make the
city liable for such excess: Watt v. Altoona, 9 Pa. Dist.
Rep. 235; Anderson v. Hamilton Twp., 25 Pa. 75; an
unauthorized contract, however advantageous, does not
bind the corporation: Loker v. Brookline, 30 Mass. 343;
Jones v. Lancaster, 21 Mass. 149; Wood v. Waterville,
5 Mass. 294; Allegheny v. McClurkan, 14 Pa. 81.

OPINION BY ORLADY, J., July 13, 1911:

The plaintiff brought suit to recover $105.25 for house-
hold and kitchen furniture furnished by him for the use of
the board of health of the defendant city, under the fol-
lowing circumstances.   On July 3, 1907, a traveling sales-
man developed smallpox while sojourning in one of the
hotels of the city.   The physician in charge of this patient
promptly notified the board of health, and a special meet-
ing of that board was called to consider the case at
2: 30 P. M. of that day and remained in session until
7: 30 P. M. and again convened at 7: 45 and continued in
session until 12: 30 A. M. of July 4.   The gravity of the
situation was fully appreciated and many suggestions
were offered in relief thereof.   An effort was made to
secure the admission of the sick man to the contagious
ward of the Oil City hospital for isolation and treatment,
but this was refused by the management of the hospital.

The minutes of the board of health show that, "After
discussing the situation at some length, the health officer
was instructed to secure a house in some convenient
location to which the patient could be moved and cared
for, and the secretary was instructed to secure a nurse, to
nurse the patient."   About midnight the board visited a
house on the outskirts of the city and decided to purchase

that property, and then selected a room in it in which the patient was to be located. Possession was taken at once, and the health officer was instructed, "to make all necessary arrangements for the transportation, care and isolation of the patient at the Koose house."

Following this another case of smallpox developed, and on July 13, the board convened in special session, when, as shown by the minutes, "it was ordered that a tent be erected on the city's lot on Hasson Heights, for the care and isolation of the patient." The health officer was instructed to secure and have erected on the above property a tent, and to remove the patient to the tent, and also "to make any necessary arrangements for the care and isolation of the patient, and also to remove the other patient (the one involved in this case) from Culvert avenue to the tent, so as to avoid the necessity of another nurse."

On the trial of the case, payment of this claim was resisted on the technical ground that there had not been a formal order given for the goods to the plaintiff by the health officer. At the conclusion of the trial the jury was directed to find a verdict in favor of the defendant, and the plaintiff appeals.

E. S. Laughlin had been the health officer of the borough for a number of years, and was the first witness called on behalf of the plaintiff, when, to expedite the trial, counsel for the defendant, admitted of record as follows, viz.: That on July 1, 1907, notice was given to the health officer that a man by the name of Clark, quarantined at the Arlington Hotel, was suffering with smallpox, or a form of that disease. That on July 3, at a meeting of the board of health, convened to consider this case, efforts were made to procure a temporary pest house, and that the health officer (the witness on the stand) had the matter in charge for the board. That about midnight of July 3, arrangements were effected, after an inspection of a property by the members of the board of health, to secure a building in the outskirts of the city, for the temporary use of this infected case.

The defendant relied upon the following questions and answers as conclusive of the nonliability of the city. "Q. Mr. Laughlin, did the board of health authorize you to purchase the furniture in question in this case? A. No, sir. Q. Did you purchase it? A. No, sir. Q. Did you have anything to do with the purchase of it? A. No, sir. Q. Was there any authority given there to anybody to purchase furniture? A. No, sir. Not to my knowledge." While this testimony, elicited on cross-examination, was quite definite, in his examination in chief the witness had testified, "that he was engaged on the third, under instructions from the board, to get a proper place to keep this patient and have him cared for. On the night of the third, I asked the secretary to secure a nurse, I gave him the address. I was busy that day in trying to hunt up a building and looking after various matters. I was in consultation with Dr. O'Day about the case. I talked with him about it, or he talked with me. In order to be ready to move the patient, as soon as I got the building, while I didn't order any furniture for the building, that night, that is, the night of the third, some time near midnight I went home, and when I went home, my understanding was that there was furniture loaded on a wagon at Mr. Koch's and would be taken up to the Koose property, and some time the next morning I was notified that the patient was there. I knew that arrangements had been made for the furniture. I knew that the furniture had been ordered to go in there; I understood that the furniture was loaded on a wagon ready to go there, or would be taken there. It was known at the board meeting, when they decided to buy the building, that arrangements had been made to get the furniture from Mr. Koch to furnish it. I went home with the understanding that I would be notified when the patient was taken there by phone. I went there just as it was getting daylight in the morning. I had been notified by phone that the patient was there. I went to Dr. Strayer's and met the nurse. She had come up from Franklin to Oil City on the street

car, and I escorted her to this house where this patient was. They expected to have the nurse take care of him, that is to cook for him and nurse him. The night before the understanding was that the furniture was waiting already loaded on a wagon. The eating, I expected to supply as health officer. I expected the nurse to do the cooking. We had her on other cases and she had done the cooking, that was the method we always used in quarantining patients like this. She was to stay there all the time."

It is conceded that every item furnished by the plaintiff was necessary for this emergency hospital; that the price charged for each is a reasonable one; that it was delivered to the house selected by the board of health, and used there in the care of this isolated patient; that additional supplies were furnished by the health officer for his maintenance at that place, and subsequently, when a tent was established as a more desirable hospital, this patient, and a part of the supplies furnished by the plaintiff were removed from this house to the tent. It was not necessary that the hand of the health officer should be applied to every separate item of this transaction. He was the mere agent of the board of health, and under the undisputed evidence these necessary supplies were furnished on the order of some one who assumed to act for the board, and whether rightly or wrongly, that authority was exercised in the interest of the city. The fact is undisputed that the property was received and used by the city in the discharge of the duty imposed by the law on the board of health. Under the Act of May 23, 1874, P. L. 230, and the Act of May 23, 1889, P. L. 277, and all other legislation on the subject of the powers and duties of the board of health, the very purpose of their creation is to safeguard human life and health throughout the commonwealth by proper regulations for the control of communicable diseases, and the prevention of infection therefrom. When complaint is made, or reasonable belief exists that an infectious or contagious disease prevails in any locality or house, it is the duty of the board of

health, by its duly authorized representative, to visit such locality or house, and make all necessary investigation by inspection, and on discovering that such infectious or contagious disease exists to send the person or persons so diseased to the pest house or hospital, and to make and enforce all needful rules and regulations to prevent the introduction and spread of infectious or contagious diseases, by regulation of intercourse with infected places, by the arrest, separation, and treatment of afflicted persons, etc. And where expense shall be incurred by the board of health in emergency or extraordinary cases, it is the duty of the municipal authorities, upon due proof of the necessity for such expenditures, to make provision for their payment.

The narrow question in this case, as contended for by the defendant, is whether sufficient proof was adduced to warrant a jury in finding that there was an implied promise on the part of the city to pay for these necessary supplies. The case does not depend on any such technical or narrow interpretation of a rule of law.

Where a person, without authority previously delegated, purchases goods for another, and the latter receives the goods, although in ignorance of the act of assumed agency, he must either disaffirm the act of the agent, and return the goods or pay the seller the market value of the same: Carlisle & Finch Co. v. Sand Co., 20 Pa. Superior Ct. 378. See also Wojciechowski v. Johnkowski, 16 Pa. Superior Ct. 444.

It is not contended in this case that the board of health exceeded its authority, or that the case was not an emergent necessity, or that the city did not receive the full equivalent for the price asked, or that the city would not be bound had the board of health by resolution directed the purchase of these articles. The authority given to the health officer by the board of health at a regular meeting, to make all necessary arrangements for the "transportation, care and isolation of this patient at the Koose house," followed by what was admittedly the proper

transportation, care and isolation of this patient at the house selected by the board of health, and the acceptance of these articles by the health officer, and the use of them in the care of this patient on behalf of the city, necessarily implied a promise to pay for them. The patient was treated as a dependent poor person, suffering with a pestilential disease, who had been refused admission to the general hospital. The action of the board of health was prompted, not only by the dictates of humanity, but by their common sense and interpretation of their duty.

The case of Borger v. Alliance Borough, 28 Pa. Superior Ct. 407, is so radically different in its facts from the one now before us, that what was so well said in that case by our Brother PORTER does not in any way affect the law applicable to a case such as is here presented. The case should have been submitted to the jury, and if no more appears than is developed in this record, it presents a case for binding instructions to find for the plaintiff.

The judgment is reversed and a venire de facias de novo awarded.